UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FIRST-CITIZENS BANK & TRUST COMPANY, as successor-in-interest to Temecula Valley Bank, National Association, ) ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 3:12-00061<br>Judge Sharp |
| TENNESSEE HOSPITALITY GROUP, INC., and KELVIN D. JONES, ) ) ) | |
| Defendants/Third-Party Plaintiffs, ) ) | |
| v. ) ) | |
| GEORGIA CERTIFIED DEVELOPMENT CORPORATION, ) ) ) | |
| Third-Party Defendant. ) | |

## MEMORANDUM

This litigation involves the default on a loan secured to purchase and construct a 63-unit Microtel Inn and Suites off Interstate 24 in Manchester, Tennessee. The essence of Plaintiff First-Citizens Bank & Trust Company's ("FCB's") Complaint is that Defendant/Third-Party Plaintiff Tennessee Hospitality Group, Inc. ("THG") executed a Promissory Note ("Note") promising to repay more than $1 million in funding, and that, as partial security for repayment of the note, Defendant/Third Party Plaintiff Kelvin D. Jones ("Mr. Jones") executed a Commercial Guaranty ("Guaranty") obliging himself to pay THG's obligations to FCB, making THG and Mr. Jones jointly and severally liable for the default. The essence of the Third-Party Complaint filed against Third-Party Defendant Georgia Certified Development Corporation ("GCDC") is that GCDC bears

1

responsibility for the default because it did not secure Small Business Administration ("SBA") funding for the project as promised.

Pending before the Court are Motions for Summary Judgment filed by FCB and GCDC. The Court considers those motions in turn after a brief review of the standards governing summary judgment.

## I. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes that there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Covington v. Knox Cnty. Sch. Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the Court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question is whether any genuine issue of material fact is in dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported summary judgment motion, the nonmoving party must set forth specific facts that show a genuine issue of material fact for trial. If the party does not do so, summary judgment may be entered. Fed. R. Civ. P. 56(e). The nonmoving party's burden to point to evidence demonstrating a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

## II. FCB'S MOTION FOR SUMMARY JUDGMENT

In support of its Motion for Summary Judgment, FCB forwards the following facts:

On or about November 14, 2007, THG executed the Note in favor of Temecula Valley Bank, National Association ("TVB") in the original principal amount of $1,066,500.00. TVB funded the Note, which required payments to be made on the fourteenth day of each month, with a final payment due SunTrust on November 14, 2008. On the day the Note was signed (and as partial security for the Note), Mr. Jones executed the Guaranty in favor of TVB obligating himself for THG's repayment of the Note.

Afterwards, TVB and THG entered into five "Changes in Terms Agreements" and one "Note Modification," all of which extended the maturity date of the Note, and some or all of which extended an interest payment only period. The last such extension was on March 7, 2011, which extended the maturity date of the Note through and including July 14, 2011. Payments were not made in accordance with the terms of the Note and the extensions.

On September 15, 2011, FCB notified THG and Mr. Jones of the default on the Note and accelerated the entire amount due and owing thereunder. As of March 22, 2013, the outstanding principal amount owed under the Note was $762,580.10, exclusive of interest, costs, and attorney's fees. The unpaid amounts continue to accrue pursuant to the terms of the Note.

Based upon the foregoing, FCB filed a two-count Complaint in this Court. In Count One, FCB sues THG for breach of the terms of the Note for failing to pay the amounts due in accordance with the repayment schedule. In Count Two, FCB sues Mr. Jones for failing to pay the amounts due under the Guaranty. FCB moves for summary judgment on both Counts.

In responding to the Motion and FCB's Statement of Uncontested Material Facts, THG and

Mr. Jones wholly fail to comply with Local Rule 56.01 which provides:

> **(c) Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (I) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record. The response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant. In either case, the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant.
>
> **(g) Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for purposes of summary judgment.

L.R. 56.01 (c) & (g). Instead of responding to each of the facts specified by FCB, THG and Mr. Jones provide their own "Statement of Disputed Facts" that, in its entirety, reads:

> 2. SunTrust is not now nor has it ever been a [sic] any monies from Defendants/Third-Party Plaintiffs.

(Docket No. 63-1 at 1). Presumably this is a response to FCB's statement of fact number two, which states that the amounts due and owing under the Note were payable to SunTrust.

How, or if, SunTrust ever figured into this case is unclear.[1] What is clear, however, is that THG and Mr. Jones do not dispute or point to any evidence that would suggest that FCB is not the successor-in-interest to TVB or the holder of the Note.[2] Under Tennessee law and Article 3 of the Uniform Commercial Code, the holder of a note has the right to enforce the instrument. See Jestes

---

[1] Elsewhere in its brief, FCB talks about the applicable burden-shifting standards and then states that "Fifth Third has the burden of proof at trial." (Docket No. 37 at 3 n. 1). What Fifth Third has to do with this case is also unclear. Perhaps the references to "SunTrust" and "Fifth Third" banks are scrivener's errors.

[2] An Allonge to the Note indicates that it was transferred to FCB immediately after TVB was closed by the California Department of Financial Institutions on July 17, 2009, and the Federal Deposit Insurance Corporation was appointed receiver.

v. Saxon Mtg. Serv., Inc., 2014 WL 1847806, at *3 (M.D. Tenn. May 8, 2014); Dauenhauer v. Bank of New York Mellon, 2013 WL 2359602, at *6 (M.D. Tenn. Jan. 16, 2013). Moreover, the Note itself states that the borrower's obligations and the terms of the Note "shall inure to the benefit of Lender and its successors and assigns." (Docket No. 1-1 at 2).

As for FCB's truistic arguments that "[u]nder Tennessee law, the rights and obligations of contracting parties are governed by their written agreements" and that "[w]hen the agreement is unambiguous, its meaning is a question of law and the court must enforce the agreement according to its plain terms" (Docket No. 37 at 4, citing Hillsboro Plaza Enters. v. Moon, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993) & Richland Country Club, Inc. v. CRC Equities, Inc., 832 S.W.2d 554, 557 (Tenn. Ct. App. 1991)), THG and Mr. Jones offer no response. In fact in their three-page Memorandum, they make no legal arguments and cite no legal authority.

Instead, THG and Mr. Jones begin their response by stating that "[a]s a condition precedent to Plaintiff making a loan to Defendants/Third-Party Plaintiffs," GCDC "committed to make application to the [SBA] on behalf of [THG] for $1,112,000.00 in permanent financing for the acquisition of land and construction of" the hotel. (Docket No. 62-1 at 1). They then go on to list how GCDC allegedly failed to carry-through on its promise. However, THG and Mr. Jones fail to cite to a single piece of evidence that would support their contention that GCDC's commitment to apply for a loan (or securing approval of a loan by the SBA) was a condition precedent to their receiving and repaying $1,066,500.00 from TVB.

What the undisputed evidence does show is that (1) TVB loaned THG money that THG promised to repay with interest, (2) Mr. Jones guaranteed that repayment; and (3) the money has not been repaid, either in accordance with the Note or the agreed-upon extensions and modification.

5

Accordingly, FCB, as the holder of the Note, and successor-in-interest to TVB, is entitled to recover on the Note. As of March 22, 2013, the amount due and owing was $813,019.54, consisting of the underlying obligation, accrued interest, late fees, and costs. FCB will be afforded an opportunity to update that amount.

Under the terms of the Note and the Guaranty, FCB is also entitled to recover attorney's fees. FCB requests $136,114.73, which represents the pre-judgment fees that it has already incurred, plus a post-judgment award of 10% of the amount of the indebtedness owed to FCB. In the Court's opinion this request is too steep.

The Note provides:

> **ATTORNEYS' FEES: EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction) and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

(Docket No. 1-1 at 2). The Guaranty contains similar language: "Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and lender's legal expenses, incurred in connection with the enforcement of this Guaranty." (Docket No. 1-2 at 1).

According to the Affidavit of Ronald G. Steen, Esq., FCB expended $55,237.75 in attorney's fees and costs through the summary judgment proceedings. Under the terms of both the Note and the Guaranty, FCB is entitled to that amount. In addition, under both, FCB is entitled to recover the fees and costs of any post-judgment collection efforts. Obviously, what that amount may be is unknown at present, but a post-judgment attorney's fees and costs award in excess of $80,000.00 is too high, particularly since FCB spent substantially less in securing a judgment in its favor. More

appropriate in the Court's view is an award reflecting roughly half of that which was expended to prevail on summary judgment. The award of attorney's fees and costs for post-judgment work will be $25,000, for a combined amount of $80,237.75.

## III. **GCDC'S MOTION FOR SUMMARY JUDGMENT**

In support of its Motion for Summary Judgment, GCDC presents the following facts (among others):

GCDC is a Certified Development Company ("CDC"). It is a non-profit corporation authorized by the SBA to deliver financing to small businesses via 504 loans.[3]

GCDC committed itself to make an application to the SBA on behalf of THG for the permanent financing of the acquisition of land and construction of the Microtel Inn & Suites in Manchester. Thereafter, GCDC filed the application and, on August 28, 2007, the SBA issued an authorization for debenture guaranty for permanent financing of the hotel project. The authorization period ended August 28, 2011.

Prior to a debenture sale, the CDC must conduct a 504 Loan Closing, and forward the closing documents to the SBA for approval. A debenture closing and sale (resulting in the closing and

---

[3] The SBA 504 loan program has been described as follows:
> SBA's 504 loan program . . . provides financial assistance through 10 or 20 year loans to small businesses. Under the program, a certified development company or CDC issues a debenture to fund the borrower's acquisition of the real property, machinery and equipment needed for a business venture. The debenture, which is guaranteed 100 percent by the SBA, is sent to a central servicing agent which disburses or sells the debenture to a pool of private investors. The proceeds of the debenture are used to fund the 504 loan. The central servicing agent then disburses the funds from the sale of the debenture to the appropriate parties. The central servicing agent also receives monthly payments from the borrower, which it holds in an interest-bearing escrow account until remitting the payments to the investors pursuant to the SBA's instructions.

United States v. Sobecki, 1998 WL 175870, at *2 (N.D. Ind. Mar. 26, 1998); see also http://www.sba.gov/content/cdc504-loan-program-eligibility (describing eligibility requirements for 504 loans) (last visited July 9, 2014).

7

approval of the sale of the debenture to actually fund the 504 loan) is subject to SBA authorization. Also prior to a 504 loan closing, the CDC is required to issue a certification to the SBA that in the CDC's opinion there have been no substantial adverse changes in the borrower's ability to repay the loan since submission of the initial loan application.

In this case, following completion of the project and prior to the 504 loan closing, GCDC formed the opinion that THC was not in a position to close on the SBA 504 loan, an opinion that did not change through the end of the authorization period. The opinion was based on the fact that, once the hotel began operating, the business was not self-sustaining. Rather, THC had to turn to Mr. Jones in order to solve cash-flow problems. The hotel did not have the money to satisfy its debts on a monthly basis and there was a considerable difference between the projected revenue and actual performance of the hotel once it became operational.

GCDC asserts that it performed all actions necessary to secure a loan in accordance with 504 loan program requirements as set forth by statute, regulations, and SBA requirements, but it was unable to make the necessary certification that there were no substantial unremedied adverse changes since the filing of the application. Because of the lack of certification, closing of the 504 loan and issuance of the debenture did not take place.

Based upon the foregoing, GCDC argues that it is entitled to summary judgment on each of the claims advanced in the Third-Party Complaint. The breach of contract claim fails, GCDC argues, because certification was a condition precedent to SBA approval both under the authorization and the federal regulations, and GCDC simply could not make the required certification. The promissory estoppel claim fails because that cause of action cannot exist when there is an express contract that covers the same subject. Finally, GCDC argues that the implied

duty of good faith and fair dealing is not an independent cause of action because such attributes are implied in every contract. The response in opposition to GCDC's Motion for Summary Judgment again does not comply with this Court's rules. Rather than responding to each of the factual assertions made, THG and Mr. Jones filed their own statement of disputed facts utilizing numbers that appear to correspond with statements of fact made by GCDC. Further, in their brief, THG and Mr. Jones cite no legal authority and never mention the causes of actions they have advanced, let alone link evidence to those causes of action that would make summary judgment inappropriate.

Rather, THG and Mr. Jones set forth a dozen statements of disputed fact that actually consist of the reiteration of two points. First, they claim that the application submitted by GCDC to the SBA was not signed by Mr. Jones nor signed with his permission; it was a forgery. Second, they point to two emails to support the proposition that GCDC had resolved the questions that it had about THG's financial situation and notified the SBA that there had been no adverse change. In one, Nancy McCarroll writes to Melody Trica on December 17, 2009, the following:

> I just got a phone call from Binta with CDC. She told me they have resolved all the questions they had about the financials and have received approval from their attorney to proceed with the debenture funding. The loan matures in January and Binta suggested extending it for at least 3 months. The interim loan is fully funded with the interest payments being paid from the 1st loan through January. We just got updated financials from CDC.

(Docket No. 67-7 at 3). The other is an email from Binta Edwards to Marianne Wiemmann dated March 2, 2010, that states:

> Our "no adverse" stamp action was submitted to SBA on Friday (2/26). Upon approval from SBA, we will schedule a closing date.

(Id. at 1). THG and Mr. Jones do not specify who those individuals are in their opposition papers, but a review of the email addresses and depositions suggest that Ms. McCarroll and Ms. Trica are

9

employees of FCB, Ms. Edwards is employed by GCDC, and Ms. Wiemmann worked for TVB.

The claim that Mr. Jones's signature on the application submitted to the SBA was forged is startling, but irrelevant. The entire premise of the Third-Party Complaint is that GCDC was required to seek the SBA's guarantee for the debentures to fund THG's project. There is no dispute that an application was the first step necessary to achieve that purpose, that the application actually submitted contained any falsehoods or misrepresentations, or that the application was insufficient or incomplete.

Ms. McCarroll's email, insofar as it pertains to the claims against GCDC, consists entirely of hearsay. She merely parrots what Ms. Binta allegedly told her. Assuming that the email can "be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2), it raises more questions than it answers. Nowhere does THG or Mr. Jones explain what Ms. Binta meant about resolving the questions of "the financials," or what she meant by receiving the attorney's approval to proceed with debenture funding.

Similarly, no explanation is given for what Ms. Binta meant by a "'no adverse' stamp" being submitted to the SBA. THG and Mr. Jones rely upon the deposition testimony of Abel D. Tellez, a Senior Vice President and Senior Commercial Resolution Officer with FCB, to explain what Ms. Binta meant. However, Mr. Tellez stated in his deposition that he did not have direct knowledge of the email exchanges because he was not involved at that point in time and, in any event, could not speak for GCDC. (Docket No. 67-8, Tellez Depo. at 37).

The basis for all of THG's and Mr. Jones's causes of action against GCDC is that it committed to securing permanent financing for the project through the issuance of debentures in accordance with the 504 loan program. It is undisputed, however, that SBA had to guaranty the

10

debentures and that this required its approval. It is also undisputed that, as a part of the approval process, certain certifications must be made, and the applicant has to be creditworthy.

> The Code of Federal Regulations provide:
>
> Following completion of the Project, the following certifications must be made before the 504 loan closing:
> (a) The interim lender must certify to the CDC that it has no knowledge of any unremedied substantial adverse change in the condition of the small business since the application to the interim lender;
> (b) The Borrower (or Operating Company) must certify to the CDC that there has been no unremedied substantial adverse change in its financial condition or its ability to repay the 504 loan since the date of application, and must furnish interim financial statements, current within 120 days of closing; and
> (c) The CDC must issue an opinion to the best of its knowledge that there has been no unremedied substantial adverse change in the Borrower's (or Operating Company's) ability to repay the 504 loan since its submission of the loan application to SBA.

13 C.F.R. § 120.892. The Code also provides that "[t]he applicant (including an Operating Company) must be creditworthy," that [l]oans must be so sound as to reasonably assure repayment," and that, in making this determination, the SBA will consider (among other things) the strength of the business; past earnings, projected cash flow and future prospects; and the "[a]bility to repay the loan with earnings from the business[.]" Id. § 120.150.

GCDC claims that after the hotel became operational it was unable to make the certification required by Section 120.892(c) because the hotel was not self-sustaining and there was a considerable difference between the projected revenue and actual revenue once the hotel opened. THG and Mr. Jones have proffered no evidence to show that GCDC's opinion was not based in fact or that the opinion was not made in good faith. To the contrary, Mr. Jones admitted in his deposition that while there was a boon in business during the weeks leading up to and including the Bonaroo

11

festival, "the business was not, on an annual basis profitable," and that he was required to make contributions to the business until it "stabilized" but did not know how long this would be. (Docket No. 60-1 at 120-21). He also conceded that THG was not able to meet both principal and interest payments and that the original projected 65% occupancy rate turned out to be 30% as of the end of 2009. Finally, Mr. Jones admitted in his deposition that, just weeks after the "no adverse change' stamp" email, he received an email dated March 18, 2010, from Ms. Edwards which indicated that GCDC was putting the 504 loan closing on hold to give THG additional time for business to ramp up so that the hotel could support its debts. (Id. at 123-140). THG and Mr. Jones offer no evidence that the business did in fact pick up prior to the expiration of the authorization period and, as a consequence, GCDC's Motion for Summary Judgment will be granted.

## IV. **CONCLUSION**

On the basis of the foregoing, the Motions for Summary Judgment filed by FCB and GCDC will be granted.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE